## D. W. FREEMAN v. THE STATE.

No. 13276.  Delivered April 9, 1930.
Reported in 27 S. W. (2d) 162.

The opinion states the case.

*Kirby, King & Overshiner* of Abilene, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

·LATTIMORE, JUDGE.—Conviction for murder; punishment, twenty years in the penitentiary.

This is a most unusual case, and a recital of the facts and sur-roundings demonstrate the danger of midnight automobiling, es-pecially if there appears that fearsome thing of alcohol in the operator when there is gasoline in the carburetor. A concrete high-way runs east and west from Midland to Abilene. Appellant and Richardson left Midland in a truck in the late afternoon to drive to Wichita Falls via Abilene. Appellant had two drinks of whiskey before leaving Midland and took five more on the road. Giving con-sideration to the testimony of State witness Richardson, it is beyond controversy that appellant was in no condition to be upon a public highway in as dangerous a machine as an automobile. He drove off the concrete and got stuck in the mud twice; at other times Richard-son had to caution him about his driving, and once Richardson jerked the steering wheel to keep appellant from having a collision with a car. A little after midnight three motorcycles, each occupied by a man and a woman, left Abilene going west on said highway. The front couple met a truck, evidently that of appellant, six or seven miles west of Abilene, and the girl on that machine testified that appellant was on the wrong side of the road going east rapidly, and that they turned their motorcycle off the concrete to avoid a collision. Hudson, deceased, with his wife occupied the next motor-cycle which had a side car attached, containing a load of things being moved. Mrs. Hudson was riding on the seat behind her husband with her arms around him. She said they were on the north side of the concrete going west; that suddenly the bright lights of a car flashed upon them; one witness mentions the fact that there was a hill about where the collision occurred. Mrs. Hudson's testimony is a bit confusing. She testified as follows:

"I do not know how far we were from the car when I first saw the glare of the lights. It was coming towards us on the left hand side of the road. He was coming towards us on the right hand side of the road. It was on the right-hand side coming towards us. We were on the right-hand side of the road, going towards it."

She also testified:

"I could not tell what part of the truck it was that struck us. I just remember seeing the side. We were not struck by the front of the truck. We were struck by the side of the truck. It was the side of the truck with which we collided. The truck was just a little piece from us when I first noticed the lights of the truck. I just noticed it coming right towards us. The lights were very, very bright. I had not noticed it down the road before we got to it. The

first time I saw it was just before the accident. I did not see it coming down the road."

It may not be amiss to say here that by the testimony of a number of witnesses it was shown that one of the side panels of appellant's truck was bent as was discovered the next morning when it was examined, a lock of human hair was caught in it. Mrs. Hudson said that when the side of the truck struck her husband it jerked him over her shoulder and she caught the handle bars of the motorcycle which ran down the road about one hundred yards and into a ditch. Beall was operating the motorcycle behind that of Hudson. A young lady was riding behind him, and he also had a side car heavily loaded. He said he was about fifty yards of the Hudson machine at the time it met the approaching truck. When he first saw the truck it was on the south side of the highway going east and it turned just before meeting Hudson. He further said that when the approaching truck turned, he himself turned his machine over to the south side of the road and passed the truck on the wrong side. There was a good deal of questioning of this witness pro and con as to the effect of the lights of two motorcycles one behind the other upon the driver of an approaching, meeting vehicle. Beall said that after going down to the Hudson machine, righting it and helping Mrs. Hudson up, he went back and found Hudson lying on the concrete near the north side in an unconscious condition.

The indictment in this case contained five counts. No. 1 charged that appellant voluntarily killed deceased by striking him with a motor vehicle; No. 2, that appellant voluntarily killed deceased by driving a truck against him; No. 3, that appellant voluntarily killed deceased by driving a truck against a motorcycle upon which deceased was riding, and by striking said motorcycle and killing deceased with said truck; No. 4, that appellant voluntarily killed deceased by means and in a manner to the grand jury unknown; No. 5, that appellant voluntarily killed deceased by intentionally driving against said deceased a truck while deceased was operating a motorcycle. The court submitted to the jury each and all of said counts, and gave a general charge, the following part of which was excepted to:

"Now, bearing in mind the foregoing instructions you are charged that if you believe and find from the evidence beyond a reasonable doubt that the defendant D. W. Freeman did in Taylor County, Texas, on or about the twenty-seventh day of May, A. D. 1929, and anterior to the presentment of this indictment unlawfully and

voluntarily kill W. W. Hudson by striking him with a motor vehicle, or by driving a truck against him, or by driving a truck against a motorcycle upon which the said W.. W. Hudson was riding and by striking said motorcycle and the said W. W. Hudson with the said truck, or by means and in a manner to the grand jurors unknown, or by intentionally driving against the said W. W. Hudson a truck, while the said W. W. Hudson was operating a motorcycle, as charged in the indictment, you will find the defendant guilty of murder and assess his punishment at death or by confinement in the penitentiary for life or for any term of years not less than two, provided that you believe from the evidence beyond a reasonable doubt that the defendant killed W. W. Hudson, you can not assess his punishment at more than five years in the State penitentiary unless you further believe from all the facts and circumstances in evidence beyond a reasonable doubt that he was prompted and acted with his malice aforethought."

We find no evidence that deceased came to his death in a manner or by means to the grand jury unknown. Such theory should not have been submitted. The wording of the charge above quoted is such that the jury may have understood that the driving of a truck by appellant against deceased or against his motorcycle, would make appellant guilty of murder. This is not the law.

We have searched this record for some evidence showing malice on the part of appellant, either directed toward deceased, or inferable as toward people in general because of some intentional act evincing a heart regardless of social duty and fatally bent on mischief, but confess to having found none. The parties were utter strangers. The collision was after midnight. Appellant had driven a long way in the night. His companion on the journey was asleep at the time of the occurrence. If the truck seen by the witness riding on the foremost motorcycle just a little while prior to the killing, was that of appellant, he was then driving on the wrong side of the road. When seen a few moments later he was on the right side of same. Just before meeting deceased appellant's truck swerved again toward the wrong side of said road. At the moment of collision it was evidently again turning toward the south side of said road, for the panel on the *left* side of said truck was bent and had caught in it a lock of human hair, as discovered upon examination. Mrs. Hudson swore that they were not struck by the front end of the truck but by the side thereof. From Mr. Richardson, State witness, we learn that appellant had been zigzagging along

the road earlier in the night, running off the concrete and getting stuck twice in the mud; that he was repeatedly cautioned and criticised by Richardson, who says on one occasion he caught the steering wheel and jerked the truck around to keep it from colliding with a car. We find nothing in the record shedding light upon the competence of appellant as a driver. Two rapidly moving cars in collision bring into danger all the occupants of each, apparently as much one as the other. It seems difficult to conceive of a sane man, not desirous of suicide, intentionally colliding with the car of another, even though a lighter one, and especially when both cars are meeting at great speed. The occurrence here was most deplorable, and reckless car driving upon highways is a practice deserving condemnation, but we can only try and sentence a citizen to penal servitude upon a showing that he has violated some written law of the land. This man could not be given a greater penalty for murder than five years, unless and until the State both alleges and proves a killing upon malice aforethought, which was not done in this case.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*